**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TEKENA USA, LLC, | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | Nos. 06 C 1558, 06 C 2408 |
| | ) | |
| LAWRENCE FISHER, TRUSTEE, | ) | |
| Appellee. | ) | |
| | ) | |

### MEMORANDUM ORDER AND OPINION

MARVIN E. ASPEN, District Judge:

Currently before us are two appeals by Appellant Tekena USA, LLC ("Appellant") from

two bankruptcy court rulings. In the first appeal (Case No. 06 C 2408), Appellant contends that

the application for the appointment of a receiver, filed by Chapter 7 Trustee Lawrence Fisher

("Trustee"), was granted in error. The second appeal contests the bankruptcy court's finding of

good cause for the appointment of the receiver without the requirement of a bond posted by

Trustee (Case No. 06 C 1558). For the following reasons, we affirm the bankruptcy court's

rulings in both cases.

### BACKGROUND

On July 12, 2005, Teknek LLC ("Debtor") filed a voluntary Chapter 7 bankruptcy case

disclosing $73.22 in assets and liabilities of $3,788,609.57. More than ninety-nine percent of

these liabilities belonged to a single unsecured judgment creditor, Systems Division, Inc.

("SDI").

In 1999, Debtor, an Illinois corporation, and Teknek Electronics, Ltd., a Scottish

company, were sued by SDI for patent infringement in a federal district court in California.

Debtor was a distributor of circuit cleaning products and equipment for Teknek Electronics,

which after insolvency proceedings was known as Teknek Holdings.   Sheila Hamilton

("Hamilton") and Jonathan Kennett ("Kennett") own 15% and 85%, respectively, of these two

companies, as well as other Teknek companies.  (Hamilton Dep. at 14:1-16, R. Ex. A.)[1]  Teknek

Holdings is not a parent company, but rather a holding company, since each Teknek entity is

separately owned by Hamilton and Kennett.  (MacKillop Dep. at 20:7-12, 51:12-13, R. Ex. H.)

In January 2004, Hamilton and Kennett agreed to reorganize the Teknek group, and in May

2004, they transferred the Debtor's assets to Teknek Electronics and terminated the

corresponding distributorship license.  (Mins. of Extraordinary General Meeting at 1, R. Ex. Q;

Hamilton Dep. at 54:22, R. Ex. A.)  The justification of this transfer was the repayment of an

"inter-company" loan that allegedly covered some of the Debtor's start-up costs in 1996,

(Hamilton Dep. at 58:6-12, 60:19-20, R. Ex. A), though did not appear as a liability on the

Debtor's books until 2000, when there was no corresponding increase in cash (Profit and Loss

Account for May 2001, R. Ex. BB.)  Records show that by the time of the asset transfer, Teknek

Electronics was indebted to the Debtor, and not vice versa.  (Profit and Loss Account for May

2004, R. Ex. BB.)  Hamilton and Kennett conducted the transfer without consideration and with

no assessment of the value of the assets.  (Hamilton Dep. at 60:3-6, R. Ex. A.)  Though the

distributorship license was to terminate in May 2004, that same month, Debtor paid by check to

secure exhibition space for Teknek America, a successor Hamilton and Kennett-company.

---

[1]Unless otherwise noted, all exhibits referred to herein are included under Tab C of the appellate exhibits.

(Invoice 4791 and Check 3803, R. Ex. EE.)  During fiscal year 2003, tax documents show that

the Debtor paid $400,000 to an overseas Teknek entity for inter-company service fees, yet these

payments did not appear on corresponding financial statements.  (2003 Form 8804 Statement 1 at

10, R. Ex. DD.)  Tax documents from fiscal year ending May 2004 show distributions to Kennett

and Hamilton in excess of the Debtor's net income.  (Hamilton Dep. at 69:18-70:20, R. Ex. A;

2003 Form 1065 at 4, R. Ex. DD.)  After the reorganization, transfers continued from Debtor's

accounts into accounts controlled by Kennett.  (Bank Statements, R. Ex. T.)

In June 2004, Hamilton and Kennett formed Teknek America, LLC, which opened for

business blocks away from Debtor's office.  Teknek Electronics (later Teknek Holdings) leased

both office spaces, and sub-leased the offices to the Debtor and Teknek America.  Tangible

assets transferred in the reorganization from the Debtor to Teknek Electronics were moved from

Debtor's office to Teknek America's office for their use.  Debtor paid its employees for six

months after it ceased operations and while those employees worked at Teknek America.

(Hamilton Dep. at 79:13-80:24, R. Ex. A.)  Teknek Electronics, which had licensed its customer

list to the Debtor, revoked this license and entered into a licensing agreement with Teknek

America.  (Hamilton Dep. at 151:11-21, 152:20-23, R. Ex. A.)  Teknek America's annual

revenue was approximately $4 million, similar to Debtor's annual revenue figures.

On August 18, 2004, after a jury verdict, the court granted SDI a judgment of

approximately $3.7 million against the Debtor, (Certificate of J. & J., R. Ex. M), which was

upheld on appeal.  Attempting to collect on the judgment in March 2005, SDI registered it with

the United States District Court for the Northern District of Illinois, where Debtor is organized

and maintains its place of business.  On June 2, 2005, Judge Shadur found owners Kennett and

Sheila Hamilton, as well as Teknek America, LLC, in civil contempt for disobeying the California court's order. (Civil Contempt Order at 3, R. Ex. V.) Judge Shadur enjoined the contemnors from engaging in any commercial activity within the United States until otherwise directed, and ordered that Teknek America, LLC, close its doors. (*Id.* at 4-5.) On June 22, 2005, Mark Rollinson, a former sales manager for Teknek LLC, and then Teknek America, registered and became member manager and president of Tekena, USA. (Form LLC-5.5, R. Ex. E.) Within weeks, and as the sole employee, Rollinson was making $40,000 per week in sales, (Rollinson Dep. at 126:3-15, R. Ex. C), and was then joined by three other Appellant owners, also former Teknek America employees. (*Id.* at 36:13-14, 75:12-16.)

When Debtor filed its voluntary petition under Chapter 7, it failed to include its vehicles and incoming funds (shown on bank statements) on its Statement of Affairs. (Hamilton Dep. at 86:8-87:6, R. Ex. A.) For months after the cessation of business, hundreds of thousands of dollars were received by and withdrawn from the Debtor's accounts. (*Id.* at 87:7-98:23.) Debtor's bank statements were being sent to Appellant's address. (July, Aug. & Sept. 2005 Bank Statements, R. Ex. T.) Checks written out to Debtor and found in the trash outside Appellant's office had been negotiated by Appellant. (TRO/Receiver Hr'g at 24:12-17, 69:3-8, Jan. 23, 2006, R. Ex. Tab E; Check Stubs, R. Ex. Z.) On September 13, after Judge Shadur's injunction had been lifted, Appellant purchased assets from Teknek America, including distribution rights and the rights to the name Teknek America, customer lists, a small amount of stock, brochures, office equipment, payroll information and other records (everything but bank accounts and receivables) for $38,500 – an assessment obtained by Teknek America. (Rollinson Dep. at 103:11-22, R. Ex. C.) Rollinson relied on this assessment and did not seek his own

appraisal. One week prior to the asset transfer, Teknek America paid approximately $3,500 for

an exhibition space at a September 2006 exhibition. (Check 1037, R. Ex. EE.)

Appellant employees, formerly employed by Debtor and then by Teknek America,

currently drive vehicles still titled and registered to Debtor and Teknek Electronics. (Titles, R.

Ex. AA; Rollinson Dep. at 93:9-96:10, R. Ex. C.)

## PROCEDURAL HISTORY

On December 30, 2005, Trustee Lawrence Fisher ("Trustee") filed an adversary

complaint (Adversary No. 06-00412) against Hamilton, Kennett, Rollinson and the three other

owners of Tekena, Tekena itself, and Kenham, LLC (formerly Teknek America). Count I,

relevant to Tekena, alleges fraudulent transfers under 11 U.S.C. § 544(b) and 740 Ill. Comp.

Stat. § 160/5, made by Kennett and Hamilton from Debtor to Teknek America, and, under 11

U.S.C. § 550, to subsequent transferee Tekena. The remaining counts include a request to pierce

the corporate veils of American Teknek entities owned by Kennett and Hamilton, allegations that

Kennett and Hamilton received wrongful distributions of profit from an LLC, that Kennett and

Hamilton breached fiduciary duties to its debtors and creditors, and allegations that Rollinson

has possession of a vehicle to which Debtor holds legal title and that this vehicle should be

surrendered to the bankruptcy trustee.

On January 19, 2006, Trustee filed an emergency motion to appoint a receiver or, in the

alternative, for a temporary restraining order. At an evidentiary hearing on January 23, 2006, the

bankruptcy court found an adequate showing of fraudulent transfers of nearly all of the Debtor's

assets to Appellant prior to the Chapter 7 petition, as well as the presence of concealed assets

and unauthorized post-petition transfers. (Corrected Prelim. Findings in Supp. of Receivership

and Conditional TRO at 1-2, R. Ex. Tab G [hereinafter Corrected Order].)  The bankruptcy court

granted Trustee's application for appointment of a receiver to monitor the Appellant's

operations, in order to preserve the Debtor's assets.  (*Id.* at 4.)  The court also modified an

existing temporary restraining order against the transfer of assets worth more than $1000 by

further restraining Appellant from destroying any records or computer files, based on Trustee's

showing that, among other discovery abuses, the Debtor's business data contained on hard drives

were destroyed.  (*Id.* at 3.)  The bankruptcy court continued the bond hearing until February 2,

2006.

At the bond hearing, Appellant requested that, under 735 Ill. Comp. Stat. § 5/2-415(a),

the receivership applicant should be required to post a bond in order to protect Appellant's assets

in case the receivership destroys its reputation, resulting in the devaluation of the operation, as

well to cover attorney's fees and other expenses accrued in contesting Trustee's application for a

receivership, in the case that, on appeal, it is found that the receiver was appointed in error.

(Appellant's Opening Br., 06 C 1558, at 3.)  Trustee argued that since the receiver's duties are

limited to auditing and monitoring Appellant's activities and investigating the relationship of the

Debtor to the Appellant and all other involved entities, the receiver is not in a position of

authority that would enable him to cause any damage to the business.  (Bond Hr'g Tr. at 9:20-

24-11:3, Feb. 2, 2006, R. Ex. Tab J.)  The bankruptcy court agreed and ordered the bond

requirement waived.  (*Id.* at 17:19-22, 18:1-3.)  Subsequently, Appellant and its four

shareholders filed a Motion to Vacate TRO and Appointment of Receiver.  The court heard the

argument on February 21, 2006, vacated the TRO that day, and two months later, issued an

opinion denying the Appellant's request to vacate the appointment of the receiver.

Appellant appeals the bankruptcy court's orders: 1) appointing the receiver; 2) granting

in part and denying in part a motion for reconsidering the receiver order; and 3) supplementing

the order for the appointment of the receiver.  Appellant also contends that the bankruptcy court

erred in waiving the posting of a bond by the applicant for the receivership, where the applicant

is an insolvent bankruptcy estate.  (Appellant's Opening Br., 06 C 1558, at 1.)  Appellant claims

that the court erred in finding cause for the waiver, and that the bankruptcy court failed to

provide a "full hearing" as required by statutory waiver.

## STANDARD OF REVIEW

In a bankruptcy appeal, we examine the bankruptcy court's factual findings for clear

error and its legal conclusions *de novo*.  *See Hoseman v. Weinschneider*, 322 F.3d 468, 473 (7th

Cir. 2003); *Meyer v. Rigdon*, 36 F.3d 1375, 1378 (7th Cir. 1994); *United Air Lines, Inc. v. HSBC

Bank USA*, 322 B.R. 347, 350 (N.D. Ill. 2005); *Outboard Marine Corp. v. Moglia*, 278 B.R. 778,

782 (N.D. Ill. 2002).  *De novo* review requires us to make an independent examination of the

bankruptcy court's judgment without giving deference to that court's analysis or conclusions.

We also review *de novo* mixed questions of fact and law.  *See In re Rovell*, 232 B.R. 381, 386

(N.D. Ill. 1998).

## ANALYSIS

### A.      Appointment of the Receiver

In order to succeed in his application for appointment of a receiver, an applicant must

demonstrate

> [F]irst, that he has a clear right to the property itself or has some lien upon it, or that
> the property constitutes a special fund to which he has a right to resort for the
> satisfaction of his claim; and second, that the possession of the property by the
> defendant was obtained by fraud, or that the property itself, or the income arising

from it, is in danger of loss from neglect, waste, misconduct or insolvency.

*Bagdonas v. Liberty Land & Investment Co.*, 309 Ill. 103, 110, 140 N.E. 49, 52 (Ill. 1923); *see*

*also Kennedy v. Miller*, 174 Ill. App. 3d 48, 51, 528 N.E.2d 406, 409 (2d Dist. 1988).  "The

appointment of a receiver is an extraordinary and drastic remedy to be exercised with utmost

care and caution, and only where the court is satisfied there is imminent danger of loss if not

exercised."  *Poulakidas v. Charalidis*, 68 Ill. App. 3d 610, 615, 386 N.E.2d 405, 409 (1st Dist.

1979).  Such appointment is only warranted when no other legal remedies exist to secure the

desired result.  *Id.*

### 1.        *Adequacy of Remedies at Law*

Appellant argues that the bankruptcy court erred in finding that the elements for

appointment of a receiver were satisfied.  First, Appellant claims that there is in fact an adequate

remedy at law.  Appellee in this case is an unsecured creditor awaiting judgment against the

eight defendants named in the adversary proceeding.  In *Grupo Mexicano de Desarrollo S.A. v.*

*Alliance Bond Fund*, the Supreme Court held that where an unsecured creditor has not yet

obtained judgment, he has no property rights in law or equity and thus preliminary equitable

relief is unavailable since it would interfere with the debtor's right to a jury trial, and would shift

the present balance between debtor's and creditor's rights.  527 U.S. 308, 330-31, 119 S.Ct.

1961, 1973 (1999).  The Supreme Court distinguished *Grupo* from *Deckert v. Independence*

*Shares Corp.*, 311 U.S. 282, S.Ct. 229 (1940), where a preliminary injunction was appropriate

since the party seeking relief had a cause of action for equitable relief.  *Grupo*, 527 U.S. at 324-

325.  The Supreme Court cited its holding in *De Beers Consolidated Mines, Limited. v. United*

*States,* that "[a] preliminary injunction is always appropriate to grant intermediate relief of the

same character as that which may be granted finally," but not in cases where the injunction deals "with a matter lying wholly outside the issues in the suit." *Id.* at 326-327 (quoting *De Beers Consol. Mines, Ltd. v. United States*, 325 U.S. 212, 220, 65 S.Ct. 1130, 1134 (1945)). Since actions to recover fraudulent transfers are considered actions at law, a preliminary injunction or other form of preliminary equitable relief is unavailable in this case. *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 45, 109 S.Ct. 2782, 2792 (1989). In addition, the Illinois attachment statute would also be unavailable, since the statute applies only to defendants who have engaged in, or are about to engage in, transfer or concealment of funds; the appellant in this case is not the transferer, but rather the receiver of the allegedly fraudulent transfer. 735 ILCS § 5/4-101 (2004).

Appellant argues that since it may be found liable under § 550(a), and a money or avoidance judgment under 11 U.S.C. § 550(a) would be an adequate remedy at law, a receiver is not necessary. Appellant further argues that the bankruptcy court erred in its finding that a receiver is necessary in this case, since it is distinguishable from the typical fraudulent transfer adversary proceeding where such a remedy under § 550(a) would be adequate. Appellant contends that transferred assets are not in danger of falling into the hands of or being altered by Kennett and Hamilton, since they do not manage or make decisions for the appellant. (Appellant's Opening Br., 06 C 2408, at 8.) While Appellant is a separate entity and is not owned by Kennett and Hamilton, there is evidence that it is part of a larger scheme to defraud SDI and the Trustee and that Kennett and Hamilton maintain close ties to Appellant. Appellant sublets its office space from Teknek Holdings, owned by Kennett and Hamilton. Kennett and Hamilton-owned entities have a licensing agreement with Appellant, and act as wholesale

sellers.  Before the September 13th transfer of assets from Teknek America to Appellant, Appellant employees mailed letters on Teknek America letterhead to Teknek America customers (Teknek LLC former customers) informing them that Tekena was open for business.  The fact that in his first month as the sole employee of Appellant, Rollinson generated $40,000 per week in sales prior to purchase of nearly all of Teknek America's assets (including items such as computers, office furniture, and a distribution agreement), further demonstrates the possibility that Tekena may have been receiving support from Kennett and Hamilton-owned entities.  Rollinson did not obtain his own appraisal of Teknek America's assets, as is typically the case in a purchase of corporate assets, but instead relied upon the assessment provided by an entity solicited by Kennett and Hamilton, which valued the assets of a company that generated approximately $4 million in sales to be $38,500.  In addition, Rollinson and another Appellant owner drive vehicles registered and titled to Debtor and Teknek Electronics, and Appellant is receiving and negotiating checks made out to Debtor but addressed to Appellant.  Debtor's bank statements for August and September 2005, after Debtor's Chapter 7 filing, were addressed and mailed to Appellant.

Although Appellant is a separate entity, several entanglements demonstrate the potential for the influence and/or involvement of Kennett and Hamilton in Appellant's affairs.  It is true that Tekena did not itself commit any fraudulent transfers, but as the receiver of allegedly fraudulent transfers, where its owners were aware of SDI's judgment against Teknek LLC, it is questionable whether the transfer was received in good faith and without knowledge of the voidability of the transfer avoided.  Kennett and Hamilton's history of inter-company loans and agreements and group reorganizations is often undocumented, or dubiously justified.  Several of

these events appear to be strategic responses to adverse court rulings, and means to avoid paying the judgment.  While receivers are not appointed as a punishment for past conduct, past conduct still may be considered in determining the nature of the present situation and evaluating whether the present situation will continue to exist in the future.  *Jackson v. Metro. Funeral Sys. Ass'n*, 268 Ill. App. 302, 310 (1st Dist. 1932).  Though there is no indication that Appellant's assets will be transferred out of Illinois, past conduct constitutes evidence of imminent loss.  Kennett and Hamilton's history of transfers and current involvement with Appellant, despite adverse judgments against them, provide adequate evidence that this elaborate "shell game" would continue in the future.  Any further co-mingling of assets would place the assets beyond the reach of the court or further diminish the value of those assets to which the winner of the adversary proceeding is entitled, as occurred when the assets of a $4 million business were sold for $38,500.  Kennett and Hamilton's association with Appellant and the intangibility of assets such as customer lists and value of a trade name render an eventual money judgment under 11 U.S.C. § 550(a) an inadequate remedy, without the interim protection of a receiver.  Since Kennett and Hamilton's only United States assets are currently in Appellant's possession, it is in the trustee's interest to preserve them pending judgment of the adversary proceeding.

> 2.     *Likelihood of Success on the Merits*

Next, Appellant argues that the trustee did not show a likelihood of success on the merits, claiming that the first set of transfers, from the Debtor to Teknek Electronics and to Teknek America, and the second transfer, from Teknek America to Appellant, involved different owners and different assets, and thus Kennett and Hamilton's fraudulent behavior cannot be extended to the second transfer.  In the adversary proceeding, Trustee alleges that the transfers from the

Debtor to Teknek America and subsequently to Appellant were fraudulent under the Uniform

Fraudulent Transfer Act ("UFTA") because the transfers were made with actual intent to hinder,

delay and defraud the bankruptcy estate and SDI, were made in anticipation of an adverse

judgment and with the intent to judgment-proof the debtor, were made to insiders, were

undocumented and concealed, were for substantially all assets, and were without consideration

and independent valuation. (Compl. at 15.) Appellant is a defendant under Count 1 not because

it initiated any transfer of assets, but rather as a mediate transferee under § 550(a)(2).

Appellant attempts to distinguish certain elements of the two transfers. To begin,

Appellant points out that the transfer from Teknek America to Appellant was one between

companies with separate ownership, that this transfer was based on a third-party valuation, and

that it did not include accounts receivable and other liquid assets. These differences do not

affect the claims that both transfers were made with the intent to hinder, defraud, or delay the

Trustee and SDI, and that they were made in anticipation of an adverse judgment. In addition,

while "proof of some, or even all, of the factors listed in the Fraudulent Transfer Act does not

create a presumption of actual intent to defraud," (*B.R. Lindholm v. Holtz*, 221 Ill. App. 3d 330,

334-335, 581, N.E.2d 860, 864 (2d Dist. 1991)), those are not the only factors that may be

considered in determining actual intent. According to the UFTA, those factors are "among

others" that may be considered. 740 ILCS § 160/5(b).

The transfer of substantial assets, the timing of the transfers, the valuation of the assets,

the carry-over in customers serviced, and the co-mingling of funds through the negotiation of

checks made out to the debtor, among other evidence, may also be considered by the court in

determining actual intent. Kennett and Hamilton's first transfer occurred just one month prior to

the verdict of SDI's patent infringement claim. Teknek LLC closed its doors and moved up the road, opening with the name Teknek America. The justification of an inter-company loan was poorly documented and appeared on the books in 2000 (though it was a loan made supposedly for start-up costs in 1996), and disappeared by the time the "debt" was being repaid. No valuation of the transferred assets was made prior to their transfer to Teknek Electronics. A company grossing $4 million annually transferred all but $73 of its assets to Teknek Electronics to repay a £1 million loan. Only 20 days after Judge Shadur's order enjoining Kennett and Hamilton from doing business in the U.S., four of their employees formed Appellant, did $40,000 worth of sales per week in the first month, and purchased Teknek America's name, licensing agreement, and certain other assets as soon the order was lifted. We agree with the bankruptcy court that since Kennett and Hamilton orchestrated both transfers under similar conditions, their subjective intent in doing so was probably "not different in any legally significant way." *In re Teknek, LLC*, 343 B.R. 850, 879-880 (Bankr. N.D. Ill. 2006). Since it is likely that Trustee will succeed on the fraudulent transfer claim, it is also likely that Trustee will be able to recover from Appellant as a mediate transferee under § 550(a)(2). If Tekena argues that this transfer was taken for value and in good faith – without knowledge of the voidability of the transfer – we agree with the bankruptcy court that such an affirmative defense would be marred by the evidence from which we can infer that Appellant owners and employees, as former Debtor employees, had knowledge of SDI's judgment against the Debtor, and that Appellant owners were aware of the relocation of Teknek's American business from the Debtor, to Teknek America, to Tekena. (*Id.* at 881-882.)

### 3. Does the Appellant Represent a Special Fund for the Trustee?

Appellant argues that it does not represent a special fund for the trustee since the property at issue is intangible and because Trustee has no right to seek ownership over the Appellant or to compel Appellant's continued operation. (Appellant's Opening Br., 06 C 2408, at 16.) We find none of these arguments compelling. Under § 550(a), once Trustee has avoided a transfer, he is entitled to recover from a mediate transferee either a money judgment or the actual property that had been illegally transferred. Given the probability of success of Trustee's claims under § 544(b) and § 550(a), Appellant's assets are vulnerable to being recovered by Trustee. Thus, we agree with the bankruptcy court's finding that the circumstances of this case satisfy the "special fund" requirement under Illinois equity jurisprudence.

### B. Bond Waiver

Appellant also contends that the bankruptcy court erred in waiving the posting of a bond by the applicant for the receivership, where the applicant is an insolvent bankruptcy estate. (Appellant's Opening Br., 06 C 1558, at 1.) Appellant claims that the court erred in finding cause for the waiver, and that the bankruptcy court failed to provide a "full hearing" as required.

### 1. Good Cause Requirement for Waiver of Applicant Bond

Section 2-415(a) of the Illinois Code of Civil Procedure (735 Ill. Comp. Stat. § 5/2-415) provides:

> Appointment of and actions against receivers. (a) Before any receiver shall be appointed the party making the application shall give bond to the adverse party in such penalty as the court may order and with security to be approved by the court conditioned to pay all damages including reasonable attorney's fees sustained by reason of the appointment and acts of such receiver, in case the appointment of such receiver is revoked or set aside. Bond need not be required, when for good cause shown, and upon notice and full hearing, the court is of the opinion that a receiver ought to be appointed without such bond.

Appellant argues the bankruptcy court erred in finding good cause for waiver of the bond.

Appellant also claims that the "clear purpose" of the bond is to protect the subject of the

receivership from damages incurred if the receivership is revoked, and that the bankruptcy court

has not sufficiently protected Appellant from two potential sources of damages: 1) the

appointment of the receiver may damage Appellant's business reputation; and 2) Appellant

would not be able to recover attorney's fees incurred as a result of the appointment if the

appointment were revoked because the estate is insolvent. (Appellant's Opening Br., 06 C 1558,

at 5-6.)

Appellant argues that even though the scope of the receiver's duties is limited, the mere

appointment of the receiver may damage its reputation, leading to a loss of customers. Such

damages are only subject to recovery "in the case the appointment of such receiver is revoked or

set aside." (*Id.*) In its findings in support of a receivership, the bankruptcy court found "a strong

probability that [Trustee] will prevail in the adversary proceeding," with regard to the fraudulent

transfer of assets. (Corrected Order at 2, R. Ex. Tab G.) In her corrected order, Judge Cox

stated that "the former assets of the debtor company have moved from company to company in a

shell game timed to respond to various adverse orders and judgment obtained by the primary

creditor of the debtor's bankruptcy estate[.]" (*Id.*)

During the bond hearing, Appellant requested that the court order SDI, Debtor's primary

creditor and competitor, to refrain from sending out notices to the public and to customers

informing them of the receivership, in order to avoid "unnecessary damages" as a result of the

receivership. (Bond Hr'g Tr. at 18:18-19:19, R. Ex. Tab J.) While Judge Cox did not grant such

an order at the hearing, she requested that Appellant put its request in writing and cite supporting

precedent. (*Id.* at 20:3-7.)

Though the waiver of a bond does not preclude the adverse party from pursuing a cause

of action to recover damages occurring as a result of the receivership in case the appointment is

revoked or set aside, *People v. Community Hospital of Evanston,* 108 Ill. App. 3d 1051, 1059,

440 N.E.2d 200, 207 (1st Dist. 1982), Appellant argues that because the receivership applicant is

responsible for an insolvent estate, it would be unable to recover any damages. While this may

be the case if in fact the appointment of the receiver were found to be in error, or were set aside

or revoked, this issue need not be addressed presently since we agree with the bankruptcy court

that the receiver was appropriate and necessary to avoid the loss of assets.

### 2. Full Hearing

Appellant claims that the bankruptcy court failed to provide a full hearing or to give a

basis for its ruling. At the February 2, 2006 bond hearing, Appellant appeared, argued the bond

issue, and provided copies of section 2-415 of the Illinois Code of Civil Procedure. Appellant

made the same arguments presented in its briefs, and offered no further evidence to the court.

Although Appellant requested a "full evidentiary hearing as to why a bond would not be

required," (Bond Hr'g Tr. at 15:1-3, R. Ex. Tab J), it does not appear that any further evidence

was to be presented. Earlier in the proceeding, the Trustee explain that there were no assets

available to him at that time (*id.* at 8:4-9), and thus any further proof of insolvency would not

have been necessary. Appellant argued during the hearing that fees were being incurred to

contest the appointment, and "[s]o if there is no bond, and we have damages, where do we go?"

(*Id.* at 15:15-16.) In addition, the appropriateness of the valuation of Appellant corporation was

also discussed at the bond hearing.  Since neither the briefs nor the record indicate what further evidence Appellant would have submitted, if any, there is no cause to believe that it was denied a full hearing.  Appellant had ample time and opportunity to prepare for the hearing, make its arguments, and present evidence to the court, and it did not offer any evidence not available in the record of the application hearing, ten days prior.  In addition, the bankruptcy court provided a basis for its ruling.  (*Id.* at 15-18.)  We find no procedural error in the bankruptcy court's conduct of the February 2, 2006 bond hearing.

## CONCLUSION

For the foregoing reasons, we affirm the bankruptcy court's appointment of the receiver and waiver of the bond requirement.  It is so ordered.

MARVIN E. ASPEN
United States District Judge

Dated: 8/31/06